## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY ALLEN HESS, | : | Civil No. 3:20-cv-2118 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Respondents | : | |

### MEMORANDUM

Petitioner Gregory Hess ("Hess") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), seeking relief from an aggregate sentence of 12 to 24 years' imprisonment entered in the Court of Common Pleas of York County, Pennsylvania, on December 31, 2015, in criminal case CP-67-CR-0004812-2014, following his November 20, 2015 convictions of criminal conspiracy to commit first-degree murder, criminal use of a communication facility, and criminal solicitation to commit first-degree murder.  The petition is ripe for disposition.  For the reasons discussed below, the Court will deny the petition.

## I.    State Court Factual Background & Procedural History[1]

In 2014, Hess was charged with multiple offenses involving various hire-to-kill plots against different victims. *Commonwealth v. Hess*, No. CP-67-CR-0004812-2014 (Pa. Ct. Com. Pl. York Cnty.).  He was charged with one count of conspiracy to commit murder in the first degree; one count of solicitation to commit murder in the first degree, relating to Michael Crampton; one count of criminal use of a communication facility; and one count of solicitation to commit murder in the first degree, relating to Calvin Jones. *See id.*  In November 2015, a jury convicted Hess on count two, criminal conspiracy to commit first degree murder of Michael Crampton; count three, criminal use of a communication facility; and count four, criminal solicitation to commit first degree murder of Calvin Jones. *See id.* He was found not guilty on count one. *See id.*  On December 31, 2015, the trial court imposed an aggregate sentence of 12 to 24 years of incarceration. *See id.*  The trial court denied Hess' post-sentence motion.

Hess filed a timely direct appeal.  (Doc. 15-1, pp. 95-96).  On July 17, 2017, the Pennsylvania Superior Court affirmed the judgment of sentence. *Commonwealth v. Hess*, 398 MDA 2017, 2017 WL 3017067 (Pa. Super. 2017).  Hess did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

---

[1]    A federal habeas court may take judicial notice of state court records. *Minney v. Winstead*, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets in the Court of Common Pleas of York County and the Pennsylvania Superior Court.

On July 13, 2018, Hess filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (*See* Doc. 15-1, p. 17). Following a hearing, the PCRA court denied the petition on March 8, 2019. (Doc. 15-1, pp. 1450-1456).

Hess filed a notice of appeal to the Pennsylvania Superior Court. (*See* Doc. 15-1, p. 21). On October 5, 2020, the Pennsylvania Superior Court affirmed the decision of the PCRA court and denied relief. *Commonwealth v. Hess*, 241 A.3d 363, 2020 WL 5890681 (Pa. Super. 2020). Hess did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

Hess then filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1).

## II.   **Habeas Claims Presented for Federal Review**

Hess seeks federal review of the following issues:

- Ground One: The Commonwealth provided perjured testimony and failed to disclose that it had promised dismissal of a witness' charges

- Ground Two: Trial counsel was ineffective for failing to seek a mistrial based on "Extra Record Jury Taint" during trial

- Ground Three: The Commonwealth failed to disclose text messages between Trooper Wolfe and its witness Michael Crampton

- Ground Four: Trial counsel was ineffective for: (1) not asking the prosecution for immediate production of text messages between Trooper Wolfe and witness Crampton, (2) not raising Hess' eligibility for the Recidivism Risk Reduction Initiative ("RRRI") program at sentencing, and (3) not calling character witnesses

3

- Ground Five: The PCRA court erred in denying relief on Hess' after-discovered evidence claim

(Docs. 1, 2).

### III.   **Legal Standards**

   #### A.   **Exhaustion and Procedural Default**

Before the federal court can consider the merits of a habeas claim, a petitioner must comply with the exhaustion requirement of section 2254(b), which requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires the petitioner to present to the state courts the same factual and legal theory supporting the claim. *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). It also requires the petitioner to preserve each claim at the state appellate level. *See Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing *O'Sullivan*, 526 U.S. at 844-45). The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In

4

addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at…trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496).

5

This requires that the petitioner supplement his claim with "a colorable showing of factual

innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477

U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of

factual innocence. *Schlup*, 513 U.S. at 324.

## B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore,

that review on the merits of the issues presented in a habeas petition is warranted, the

scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*,

171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court

decision to be an unreasonable application of federal law if the decision, "evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301

F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)(3)).  Mere

disagreement with an inferential leap or credibility judgment of the state court is insufficient

to permit relief.  *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362,

408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding

lacks evidentiary support in the state court record or is plainly controverted by evidence

therein should the federal habeas court overturn a state court's factual determination.

*Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

### C.    Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of

counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  This right to effective

assistance of counsel also extends to the first appeal.  *Lewis v. Johnson*, 359 F.3d 646, 656

(3d Cir. 2004).  In *Strickland*, the Supreme Court articulated a two-prong test in assessing

whether a petitioner has been denied the effective assistance of counsel.  *Strickland*, 466

U.S. at 687-88.  A petitioner must demonstrate: (1) that his counsel's representation "fell

below an objective standard of reasonableness" and (2) that such defective performance

caused the petitioner prejudice.  *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly

deferential" toward counsel's conduct.  *Id.* at 689.  There is a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.* ("It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

9

IV.    **Discussion**

It is first necessary to determine whether Hess' claims presented in his habeas

petition are cognizable in a federal habeas proceeding and whether they have been

exhausted in the state courts and, if not, whether the circumstances of his case are

sufficient to excuse his procedural default.

A.    **Non-Cognizable Claim—Ground Five**

Hess contends that he is entitled to relief based on the after-discovered evidence of

testimony and an affidavit allegedly written by Eric Hamme, a man who was incarcerated

with Crampton and with Hess.  (Doc. 2, pp. 58-69).  He alleges that the PCRA court erred in

denying relief on his after-discovered evidence claim.  Hess indicates that at the PCRA

hearing held on November 28, 2019, the after-discovered evidence was offered by Hess.

(*Id.* at p. 59).  He further argues that had the evidence been available to the defense at trial,

it would have "support[ed] the defense theory of the case."  (*Id.* at p. 65).

Inasmuch as Hess is raising a claim of error in his PCRA proceedings, he cannot do

so.  "[H]abeas proceedings are not the appropriate forum for [Hess] to pursue claims of

error at the PCRA proceeding."  *Lambert*, 387 F.3d at 247; *see also Holland v. Folino*, No.

13-cv-6623, 2015 WL 1400660, at *1 (E.D. Pa. Mar. 26, 2015) (noting that "[e]rrors alleged

during state collateral review are non-cognizable on federal review").  "The federal courts

are authorized to provide collateral review where a petitioner is in state custody or under a

federal sentence imposed in violation of the [C]onstitution or the laws or treaties of the

United States. 28 U.S.C. §§ 2254, 2255. Thus, the federal role in reviewing an application

for habeas corpus is limited to evaluating what occurred in the state or federal proceedings

that actually led to the petitioner's conviction; what occurred in the petitioner's collateral

proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d

941, 954-55 (3d Cir. 1998). Because Hess' claim is based on alleged error that occurred

during his PCRA proceedings, it is not cognizable.

Further, to the extent Hess advances an actual innocence claim, the Court will

address it in the merits section below.

### B.   Defaulted Claims—Grounds One and Four

A few of Hess' claims have not been pursued in the state courts. Part of ground one

(alleging that the Commonwealth provided perjured testimony), and part of ground four

(alleging that trial counsel was ineffective for failing to raise RRRI eligibility at sentencing

and failing to call character witnesses), in Hess' habeas petition have not been presented to

any state court. The time for filing both a direct appeal and a PCRA petition has expired,

and the state procedural rules prohibit Hess from bringing these claims in state court. *See*

PA. R. APP. P. 903(a) (time for filing a direct appeal); 42 PA. CONS. STAT. § 9545(b)(1)

(PCRA statute of limitations); 42 PA. CONS. STAT. § 9544(b) (PCRA waiver rule). Because

there are no longer any state remedies available to Hess, these claims are procedurally

defaulted, and review of the claims is barred. *Coleman*, 501 U.S. at 731-32; *Toulson v.*

*Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

Regarding ground one, alleging that the Commonwealth provided perjured testimony, Hess failed to allege, as is his burden, the existence of either cause or prejudice for the procedural default and none appears on the record.  Neither does it appear that a miscarriage of justice would occur.  Accordingly, habeas review of this claim is foreclosed.

With respect to ground four, alleging that trial counsel was ineffective for failing to raise RRRI eligibility at sentencing and failing to call character witnesses, Hess invokes *Martinez* to excuse the procedural default of these claims.  (Doc. 1, p. 11; Doc. 2, pp. 110-111).  He argues that the procedural default should be attributed to "PCRA attorney's fail[ure] to address trial attorney's ineffectiveness for not calling character witnesses.  Appeal attorney also failed to address same at Superior Court.  Appeal attorney also failed to address RRRI eligibility."  (Doc. 1, p. 11).

*Martinez* recognized a narrow exception to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default.  *Martinez*, 566 U.S. 1.  Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Id.* at 9.  To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of

the state collateral review proceeding.  *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402,

410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel

claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for

that matter, agree that) the petition should have been resolved in a different manner or that

the issues presented were adequate to deserve encouragement to proceed further."

*Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *see also*

*Martinez*, 566 U.S. at 13-14.  A petitioner demonstrates that post-conviction counsel's

ineffectiveness caused the procedural default by showing that post-conviction counsel's

performance was deficient under the first prong of the *Strickland* standard.  *See Preston v.*

*Superintendent Graterford SCI*, 902 F.3d 365, 376 (3d Cir. 2018); *see also Workman*, 915

F.3d at 937-38.  Satisfaction of the first *Strickland* prong requires a petitioner to demonstrate

that "counsel's representation fell below an objective standard of reasonableness," with

reasonableness being judged under professional norms prevailing at the time counsel

rendered assistance.  *Strickland*, 466 U.S. at 688.

First, because Hess seeks to have procedural default excused, in part, based on

PCRA counsel's failure to pursue ineffective assistance of trial counsel claims in the PCRA

*appeal* proceedings, rather than the initial collateral review proceedings, *Martinez* does not

apply.  Additionally, to the extent the claim regarding failure to raise RRRI eligibility

concerns trial court error (*see* Doc. 2, pp. 112-113), not trial counsel ineffectiveness,

*Martinez* is not available to alleviate the procedural default of this claim.  Federal review of these claims is precluded based on procedural default.

Second, Hess seeks to have procedural default excused based on PCRA counsel's failure to raise ineffective assistance of trial counsel for failing to call character witnesses. As such, this claim necessitates a *Martinez* analysis.  "To prove counsel had been ineffective for failing to call a witness, the PCRA petitioner must show that: (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.  *Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008) (citation omitted)." *Commonwealth v. Williams*, 2016 WL 6901354, *2 (Pa. Super. 2016).  In applying Pennsylvania's failure to call a witness standard to Hess' claim, it is clear that he failed to meet his burden.  He wholly failed to demonstrate that any of the witnesses existed, that they were available, and that they were willing to testify.  He further failed to demonstrate that the absence of the witnesses' testimony was so prejudicial that it denied him a fair trial. Because the underlying otherwise defaulted ineffective assistance of counsel claim does not meet the "some merit" threshold, *Martinez* is unavailable to excuse Hess' procedural default of this claim.

C.    **Exhausted Claims—Grounds One, Two, Three, Four, and Five**

      1.  **Ground One—The Commonwealth failed to disclose to the defense that it promised a witness dismissal of his charges**

Hess alleges that the Commonwealth failed to disclose that it had promised to

dismiss the charges against witness Crampton in exchange for his testimony.  In

considering this issue on PCRA appeal, the Superior Court found as follows:

> Appellant next claims that the PCRA court erred in denying relief on his *Brady* claim.  Our Supreme Court summarized the law relevant to the adjudication of such claims as follows:

>> The law governing alleged *Brady* violations is well-settled.  In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence.  Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

>> On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions.  Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.  Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches;

the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

Appellant contends that the Commonwealth violated his *Brady* rights by failing to disclose that it offered favorable treatment to Mr. Crampton and Edward Luttrell in exchange for their testimony, and by neglecting to correct at trial their perjured denials of the existence of any deal with the prosecution. Appellant's brief at 44-51.

Specifically, Appellant notes that Mr. Crampton had twice asked for drug charges against him to be dismissed in exchange for his testimony against Appellant. *Id.* at 44. The Commonwealth dismissed the charges five days after Mr. Crampton's first request, reinstated them when he failed to appear at the preliminary hearing to testify against Appellant, and *nolle prossed* them again after Mr. Crampton testified at Appellant's trial. *Id.* at 44-45. Yet, Mr. Crampton testified at the trial that he had received no firm promises from the Commonwealth, only that he would receive consideration for his cooperation. *Id.* at 44. Appellant maintains that this circumstantial evidence of an understanding, even if it had not been memorialized in a formal agreement, would have had a profound impact on the outcome of the trial, as it impeached the credibility of an essential witness. *Id.* at 48. Appellant's averments and arguments regarding the prosecutorial accommodations allegedly offered to Mr. Luttrell are substantially similar. *See id.* at 48-51. The PCRA court denied relief on the *Brady* claim upon finding that Appellant failed to prove that there were any deals that the Commonwealth failed to disclose:

> In this case, both [Mr.] Crampton and [Mr.] Luttrell testified that there was no deal; they were merely told that "consideration would be given." Plea documents reflect that there was no deal; the District Attorney's Office testified that there was no deal, and therefore there was nothing to disclose. [Appellant] asserts that because the [witnesses] were happy with their sentences that there must have been a deal. This court is satisfied that there is no merit to this…claim.

Order Denying PCRA Petition, 3/8/19, at 5-6.

16

Again, the PCRA court's ruling was based upon its credibility determinations, and those are supported by the record. *See* N.T. PCRA Hearing, 11/28/18, at 24-31, 39-41 (District Attorney David Sunday testifying that there was no deal offered to either Mr. Crampton or Mr. Luttrell prior to Appellant's trial; the reason the charges were initially dismissed against Mr. Crampton was to remove a state parole detainer to render him available to be utilized in the investigation against Appellant, and the second dismissal was based upon the time he had served and the risk of violence he faced remaining in prison as a known "snitch"); N.T. PCRA Hearing, 11/29/18, at 5-8 (Chief Deputy Public Defender Erin S. Thompson confirming testimony regarding the lack of a deal with her client, Mr. Crampton, and the reasons for the dismissal of charges).  Therefore, we accept the fact that there was no deal to disclose.  Consequently, there was no *Brady* violation and no relief is due.

*Commonwealth v. Hess*, 2020 WL 5890681, at *4-5.

In *Brady*, the United States Supreme Court held that the due process rights of a defendant are violated when the prosecution withholds favorable, material evidence from the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  To prove a *Brady* violation, the petitioner bears the burden of demonstrating that "(1) the prosecutor suppressed evidence; (2) the evidence, whether exculpatory or impeaching, was helpful to the [petitioner;] and (3) the suppression prejudiced the [petitioner]." *Commonwealth v. Collins*, 888 A.2d 564, 577-78 (Pa. 2005) (citing *Brady*, 373 U.S. at 83).  To establish prejudice, the petitioner must prove that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011).

Against this backdrop, the PCRA court considered Hess' claim that the

Commonwealth violated *Brady* by failing to disclose that there was an alleged deal between

Michael Crampton and the Commonwealth.  The PCRA court noted that Crampton himself

testified that there was no deal, and plea documents reflected that there was no deal.  (Doc.

15-1, p. 1454).  After summarizing the testimony of Crampton and the District Attorney's

office, the PCRA court found that Hess had neither substantiated a *Brady* violation nor

shown prejudice flowing from the Commonwealth's alleged failure to disclose a deal as

there was no evidence of a deal and therefore nothing for the Commonwealth to disclose

under *Brady*.  (*Id*.). The PCRA court's and Superior Court's analyses of the claimed *Brady*

violation is clear: in concluding that Hess has not substantiated a *Brady* violation and has

not been prejudiced, the state courts unequivocally found that there was no deal to disclose.

This Court cannot say that this conclusion was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the

United States.  Nor has Hess demonstrated that the state courts' decisions were based on

an unreasonable determination of the facts in light of the evidence.  Therefore, the Court will

deny this claim.

### 2. Ground Two: Trial counsel was ineffective for not seeking a mistrial based on "Extra Record Jury Taint" during trial

Hess argues that trial counsel was ineffective for failing to seek a mistrial when the

parties were made aware of juror communications regarding information about Hess' prior

18

case. In affirming the PCRA court's denial of this claim, the Superior Court found as

follows:

> Appellant first contends that trial counsel rendered constitutionally deficient
> assistance by not moving for a mistrial. Specifically, Appellant extensively
> details evidence of record that at least one juror in the instant murder-for-hire
> case learned of a prior case in which Appellant was acquitted of the alleged
> solicitation of Mr. Jones to commit murder, and discussed it with other jurors.
> *See* Appellant's brief at 24-29. Appellant maintains that the jurors' exposure
> to this information and improper mid-trial discussions about it were highly
> prejudicial, "effectively stripped him of the presumption of innocence," and
> subverted his due process rights. *Id.* at 29-30. Appellant cites his testimony
> at the PCRA hearing that he desired a mistrial on this basis, but counsel
> failed to consult him. *Id.* at 30-31. Appellant further suggests that his trial
> attorneys had no reasonable basis to refrain from seeking a mistrial, because
> avoiding going through a second trial was not reasonably designed to
> effectuate Appellant's interests. *Id.* at 31.
>
> The PCRA court, on the other hand, cites contrary testimony which it deemed
> credible, indicating that Appellant's trial attorneys **did** discuss the option of
> seeking declaration of a mistrial in response to this information. *See* Order
> Denying PCRA Petition, 3/8/19, at 5. During this discussion, "everyone
> agreed that they were halfway through the case, they all felt confident in the
> way in which the testimony was going, and they all believed that the jury
> knowing that [Appellant] had been acquitted of very similar charges would
> weigh in their favor and not be detrimental to their client." *Id.* Indeed, all
> three attorneys and Appellant agreed not to pursue a mistrial, but to instead
> request a cautionary instruction, which the trial court gave to the jury. *Id.*
>
> The PCRA court's factual findings and credibility determinations are
> supported by the record, and thus must be accepted by this Court. *See* N.T.
> PCRA Hearing, 11/20/18, at 54, 78-79, 109 (testimony from Appellant's trial
> counsel that a mistrial motion was discussed with Appellant and it was
> decided as a group to proceed instead). As such, Appellant's challenge to
> the reasonable-basis prong of the ineffectiveness test, which is premised
> upon his testimony that contradicts separate testamentary evidence accepted
> as credible by the PCRA court, fails. Since Appellant cannot establish that
> counsel lacked a reasonable basis for forgoing a mistrial, we have no basis to
> reverse the PCRA court's denial of his first claim.

*Commonwealth v. Hess*, 2020 WL 5890681, at *2-3.

In addressing this claim, the Superior Court, in reviewing the PCRA court's conclusions, noted that "Appellant's trial attorneys **did** discuss the option of seeking declaration of a mistrial in response to this information…[and] everyone agreed that they were halfway through the case, they all felt confident in the way in which the testimony was going, and they all believed that the jury knowing that [Appellant] had been acquitted of very similar charges would weigh in their favor and not be detrimental to their client." *Commonwealth v. Hess*, 2020 WL 5890681, at *3 (emphasis in original). This Court's review of the PCRA transcript (Doc. 15-1, pp. 1169, 1193-1194, 1223-1224) confirms that all three trial attorneys did discuss seeking a mistrial with Hess, but the parties decided to proceed and "all attorneys and the defendant were unanimous in not requesting a mistrial," (*id.* at p. 1454). Upon review of the record, this Court concludes that the disposition of Hess' claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Hess has failed to demonstrate that he was prejudiced by counsel's allegedly ineffective performance because he has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, this ground for relief will be denied.

### 3. Ground Three: The Commonwealth failed to disclose text messages between Trooper Wolfe and its witness Michael Crampton

Hess' next claim alleges prosecutorial misconduct; specifically that the

Commonwealth failed to disclose text messages between Trooper Wolfe and Crampton

which would have impeached Crampton's testimony.  On PCRA appeal, the Superior Court

addressed this issue in the context of an ineffective assistance of counsel claim and

concluded that the PCRA court properly found that there was no evidence that the text

messages existed.  *Commonwealth v. Hess*, 2020 WL 5890681, at *3-4.  The Superior

Court affirmed the PCRA court's decision and stated as follows:

> Upon consideration of the testimony, the PCRA court found no arguable merit
> to the claim or prejudice suffered by Appellant, because it was "satisfied that
> these text messages do not exist…."  Order Denying PCRA Petition, 3/8/19,
> at 3.  Concerning the allegation that counsel should have called Trooper
> Wolfe to question him about his communications with Mr. Crampton during
> that time, the PCRA court found Appellant's proof of both the arguable merit
> and reasonable basis prongs lacking.  The court concluded that the existence
> of any exculpatory evidence in these conversations was fabricated "out of
> whole cloth."  *Id*. at 4.

> We again find no basis to disturb the PCRA court's findings.  Trooper Wolfe
> testified at the PCRA hearing that he did not receive any text message
> concerning Mr. Crampton's failure to appear at the preliminary hearing.  *See*
> N.T. PCRA Hearing, 11/28/18, at 9, 11.  Rather, Trooper Wolfe indicated he
> received a call from Mr. Crampton from a phone with a blocked number, and
> that he shared the information with Appellant's trial attorneys.  *Id.* at 9-10.

*Commonwealth v. Hess*, 2020 WL 5890681, at *4.

The Superior Court's denial of Hess' prosecutorial misconduct claim was not an

unreasonable application of well-established federal law.  And Hess has not demonstrated

that the state courts' determination of the facts was unreasonable in light of the evidence.

Hess' assertion that text messages between Trooper Wolfe and Crampton must exist, and

were withheld as evidence at trial, are based on nothing more than his bald assertion that

the text messages existed.  As the Superior Court noted, Trooper Wolfe testified that he

received a phone call from Crampton, not a text message, and that he shared the

information with Hess' trial attorney.  The state courts found that there is no evidence that

the text messages actually existed.  The Court finds that this claim is meritless, and Hess is

not entitled to habeas relief.

### 4. Ground Four: Trial counsel was ineffective for not asking the prosecution for production of text messages between Trooper Wolfe and witness Crampton

Next, Hess alleges that trial counsel was ineffective for failing to ask the prosecution

for the immediate production of text messages between Trooper Wolfe and Crampton.  As

stated *supra*, the state courts found that there was no evidence that the text messages

existed.  On PCRA appeal, the Superior Court addressed this issue as follows:

> Next, Appellant contends that his trial attorneys were ineffective in not
> obtaining certain text messages.  The PCRA court offered the following
> background information concerning this issue:
>
>> During the course of trial, there was testimony from Michael
>> Crampton in which he referred to a text communication between
>> himself and trooper Shawn Wolfe of the Pennsylvania State Police.
>> The communication allegedly happened during a period of time that
>> [Mr.] Crampton was the subject of a fugitive warrant....
>>
>> During the PCRA hearing, testimony revealed that trial counsel for
>> [Appellant] immediately met with the District Attorney who was trying

the case to inquire as to why they had not received copies of these text messages. Testimony also revealed that it was explained to counsel that there were no text messages and that the witness was mistaken. [Trooper Wolfe] testified that there was a phone call in which [Mr. Crampton] told the trooper that he desired to turn himself in.

Order Denying PCRA Petition, 3/8/19, at 2-3.

Appellant argues that trial counsel violated his right to effective assistance of counsel in "specifically disregarding his demand" that they obtain the text messages to which Mr. Crampton testified. Appellant's brief at 32-33. Appellant suggests that these communications "necessarily concern[ed] his fugitive status, and the need for [Mr.] Crampton to surrender…in order to receive a deal for his testimony against Appellant." *Id.* at 33. Appellant posits that these exculpatory communications, whether they were via text message or telephone conversation, should have been pursued by counsel to impeach Mr. Crampton. *Id.* Specifically, Appellant speculates that if Trooper Wolfe had been called to testify about the communications and had denied offering any deal to Mr. Crampton, "much stood to be gained by the jury in assessing through his demeanor, deportment, expressions and statements, the Trooper's credibility, regarding any potential deal or agreement during cross-examination, and in undermining [Mr.] Crampton's testimony about sending text messages." *Id.* at 34.

Upon consideration of the testimony, the PCRA court found no arguable merit to the claim or prejudice suffered by Appellant, because it was "satisfied that these text messages do not exist…." Order Denying PCRA Petition, 3/8/19, at 3. Concerning the allegation that counsel should have called Trooper Wolfe to question him about his communications with Mr. Crampton during that time, the PCRA court found Appellant's proof of both the arguable merit and reasonable basis prongs lacking. The court concluded that the existence of any exculpatory evidence in these conversations was fabricated "out of whole cloth." *Id.* at 4. Moreover, the PCRA court credited counsels' position of strategizing that it "would be more productive to argue missing facts to the jury, which they did vehemently." *Id.* "The alternative would have been to call the [trooper], have him explain, and lose any traction with the jury by proving that there was no exculpatory evidence for [Appellant] in these communications." *Id.*

> We again find no basis to disturb the PCRA court's findings.  Trooper Wolfe
> testified at the PCRA hearing that he did not receive any text message
> concerning Mr. Crampton's failure to appear at the preliminary hearing.  *See*
> N.T. PCRA Hearing, 11/28/18, at 9, 11.  Rather, Trooper Wolfe indicated he
> received a call from Mr. Crampton from a phone with a blocked number, and
> that he shared the information with Appellant's trial attorneys.  *Id*. at 9-10.
> Further, counsel reasonably strategized that it was not worth the risk of calling
> Trooper Wolfe to question him about the alleged text messages or phone call
> when they had no proof of a text message of call, and no idea what Trooper
> Wolfe's testimony would have been.  *See* N.T. PCRA Hearing, 11/20/18, at
> 51-52, 73-74.

*Commonwealth v. Hess*, 2020 WL 5890681, at *3-4.

Hess failed to carry his burden to show that the foregoing disposition of this claim by

the Superior Court was contrary to or an unreasonable application of United States

Supreme Court precedent.  Indeed, it is neither.  Given the presumption of effectiveness of

counsel, it is Hess' burden to rebut the presumption and establish all those facts necessary

to do so.  As the state courts found, Hess clearly failed to establish the predicate facts to

sustain the claim that trial counsel was ineffective for doing anything with supposed text

messages that, for all the record shows, were simply non-existent.  Hess is not entitled to

habeas relief on this ground.

### 5. Ground Five: The PCRA court erred in denying relief on the after-discovered evidence claim

Lastly, the Court considers Hess' claim that the PCRA court violated his rights by

denying newly discovered evidence that would have proven his innocence.  (Doc. 2, pp. 65-

67).  The Supreme Court treats actual innocence as a gateway for consideration of

procedurally defaulted claims.  *See McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup*, 513

U.S. at 327-29 (requiring a showing "that it is more likely than not that no reasonable juror

would have convicted [the petitioner] in the light of the new evidence").  It has not yet

recognized the existence of a freestanding claim of actual innocence.  *See McQuiggin*, 569

U.S. at 392, citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (explaining "[c]laims of

actual innocence based on newly discovered evidence have never been held to state a

ground for federal habeas relief absent an independent constitutional violation occurring in

the underlying state criminal proceeding.").  However, as observed in a non-precedential

Third Circuit opinion, "the *Herrera* Court left open the possibility of a freestanding claim of

actual innocence (particularly in the capital context):

> We may assume, for the sake of argument in deciding this case, that
> *in a capital case a truly persuasive demonstration of "actual
> innocence" made after trial would render the execution of a
> defendant unconstitutional, and warrant federal habeas relief if there
> were no state avenue open to process such a claim.*  But because of
> the very disruptive effect that entertaining claims of actual innocence
> would have on the need for finality in capital cases, and the
> enormous burden that having to retry cases based on often stale
> evidence would place on the States, the threshold showing for such
> an assumed right would necessarily be *extraordinarily high*.

> [*Herrera*, 560 U.S.] at 417, 113 S.Ct. 853 (emphasis added).  Ultimately, the
> petitioner did not make a sufficient showing of innocence because the affidavits he
> submitted raised credibility issues more appropriate for a jury.  *Id*. at 418-19, 113
> S.Ct. 853."

*Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 120 (3d Cir. 2015).

Like the petitioner in *Herrera*, Hess does not seek excusal of a procedural error; rather, he argues that newly discovered evidence would have proven his innocence. The Court concludes that, even if a freestanding claim of actual innocence is cognizable, the merits of Hess' claim "do not satisfy the *Schlup* gateway standard, much less the 'extraordinarily high' standard required by *Herrera*." *Wright*, 601 F. App'x at 121.

The Superior Court considered this claim as follows:

> Finally, Appellant contends that the PCRA court erred in denying relief on his after-discovered evidence claim. To obtain a new trial based upon after-discovered evidence, a PCRA petitioner must prove that the evidence in question: "(1) was discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) is not cumulative; (3) is not being used solely to impeach credibility; and (4) would likely compel a different verdict." *Commonwealth v. Hannibal*, 156 A.3d 197, 221 (Pa. 2016). Moreover, the "[after-]discovered evidence must be producible and admissible to entitle a petitioner to relief." *Id.*

> Appellant's after-discovered evidence was the affidavit and testimony of Eric Hamme, a man who at different times was incarcerated with Mr. Crampton and with Appellant. The court summarized Mr. Hamme's evidence as follows:

>> [Mr.] Hamme alleged that he met Michael Crampton while housed in a pre-hearing confinement housing unit between October 29, 2018 and November 1, 2018. [Mr.] Crampton allegedly told [Mr.] Hamme that he had befriended an "old rich guy," learned the details of the case, and then used the information to construct a fictitious murder-for-hire plot in order to get out of prison. Additionally, [Mr.] Crampton allegedly told [Mr.] Hamme that [the District Attorney] promised to drop all of his charges as long as he testified against [Appellant], but that if [Mr.] Crampton was asked about it just to use the word "consider."

> PCRA Court Opinion, 11/22/19, at 2 (footnotes omitted).

While Appellant presents argument to this Court concerning how Mr. Hamme's testimony satisfied each of the four prongs of an after-discovered evidence claim, he offers no argument to support the admissibility of Mr. Hamme's testimony.  *See* Appellant's brief at 53-62.

The PCRA court determined that one of the reasons Hamme's recitations of Mr. Crampton's out-of-court statements would not be admissible at trial for the truth of the matter asserted was because they did not fall within a hearsay exception.  *See* PCRA Court Opinion, 11/22/19, at 4.  We agree.  Since Mr. Crampton was not a party, his statements could not come in pursuant to Pa.R.E. 803(25), and because he was not an unavailable witness, they were not admissible statements against interest under Pa.R.E. 804(b)(3).  With no admissible after-discovered evidence, the claim was properly denied.  *See Hannibal, supra* at 221.

The PCRA court also determined that, even if the evidence was admissible and admitted, it was not likely to compel a different verdict.  The court explained:

> [Mr.] Hamme came forward with the allegation that [Mr. Crampton] made up the story only after [Mr. Hamme] met [Appellant] and his girlfriend look into [Appellant's] sizeable assets.  Additionally, the jury would have been made aware of [Mr.] Hamme's prior charges, two counts of intimidation of a victim or witness, forgery, and conspiracy for counterfeiting.  For those reasons the jury would have found his testimony wholly lacking in credibility and they would not have rendered a different verdict.

PCRA Court Opinion, 11/22/19, at 6-7.

Yet again, we have no basis to disturb these findings because they are supported by the record.  *See* N.T. PCRA Hearing, 11/29/18, at 15-20 (Mr. Crampton testifying that his trial testimony was truthful and Mr. Hamme's story was a fabrication based in part upon overhearing conversations that Mr. Crampton had with the prisoner housed in between his cell and Mr. Hamme's cell).  *See also id.* at 52-54, 59-75 (cross-examination of Mr. Hamme concerning his criminal history and that he drafted his affidavit and presented it to Appellant after Mr. Hamme's paramour investigated Appellant's history and Mr. Hamme learned details about Appellant's case and his financial resources from Appellant while they were imprisoned together).  On this basis

alone, Appellant's claim was properly denied. *See Commonwealth v. Diggs*, 220 A.3d 1112, 1118 (Pa. Super. 2019) (affirming dismissal of after-discovered evidence claim where the PCRA court determined that the new evidence was "wholly lacking in credibility"). Appellant's final issue fails on this alternate basis as well.

*Commonwealth v. Hess*, 2020 WL 5890681, at \*5-7.

The state courts reasonably concluded that Hess failed to demonstrate that the after-discovered evidence would have been admissible, and, even if the evidence was admissible and admitted, it was not likely to compel a different verdict. Further, to the extent that he asserts actual innocence, even if such a claim was available to Hess, he wholly failed to establish that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. Upon review of the record, the Court concludes that Hess has failed to demonstrate that the state courts' disposition of his after-discovered evidence claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Nor has he demonstrated that the state courts' determination of the facts was unreasonable in light of the evidence. Relief is not warranted on this claim.

## V.   **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.  Hess failed to demonstrate that a certificate of appealability should issue.

## VI.   Conclusion

The Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: October 31, 2023